# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JASON DOUGLAS and CHERYL DOUGLAS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:17-CV-02588-B |
| WELLS FARGO BANK, N.A., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wells Fargo Bank, N.A.'s (Wells Fargo) motion to dismiss. Doc. 12. For the reasons that follow, the Court **GRANTS** Wells Fargo's motion.

## I.

## BACKGROUND[1]

This is a foreclosure case. In July 2015, Plaintiffs Jason and Cheryl Douglas purchased their home. Doc. 8, Pls.' First Am. Compl., ¶¶ 8–9. In connection with their purchase, the Douglases executed a note for $415,266 and an accompanying deed. *Id.* Wells Fargo holds the note and the deed. *Id.* ¶ 10.

The Douglases contacted Wells Fargo to set up automatic payments in September 2016. *Id.* ¶ 11. Payments were automatically withdrawn from the Douglases' bank account in September and October. *Id.* But the Douglases failed to pay their mortgage from November 2016 to January 2017. *Id.*

---

[1] The Court draws its facts from the Douglases' first amended complaint. Doc. 8.

On January 17, 2017, Wells Fargo informed the Douglases in a letter that their payments were past due. *Id.* ¶ 12. Nevertheless, the Douglases did not make past-due payments and failed to pay their mortgage in February and March. *Id.* ¶ 11. On March 3, 2017, Wells Fargo sent another letter stating that the Douglases' payments were past due. *Id.* ¶ 13. After receiving the second letter, the Douglases called Wells Fargo and asked whether they could make a $14,000 payment over the phone. *Id.* ¶ 14. A Wells Fargo representative agreed to accept the payment, but the Douglases do not allege that their payment ever went through. *Id.*

On March 13, 2017, Wells Fargo sent an escrow shortage letter notifying the Douglases that their May 2017 mortgage payment would increase to $3199.86 and that no further action was required from them. *Id.* ¶ 15. The Douglases thought that their loan was no longer delinquent based on the representative's willingness to accept the $14,000 payment and the escrow shortage letter's indication that no action was required. *Id.* But on May 2, 2017, a substitute trustee sold the Douglases' home at a foreclosure sale. *Id.* ¶ 16.

In August 2017, the Douglases filed suit in Texas state court. The case was removed to this Court shortly thereafter. Doc. 1. That October, Wells Fargo filed the present motion to dismiss, which is ripe for consideration. Doc. 12.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

The Douglases claim in their complaint that Wells Fargo (1) violated the Texas Debt Collection Practices Act (TDCA), (2) breached the deed, and (3) committed negligent misrepresentation.[2] The Court will address the plausibility of these claims below.

---

[2] In their response, the Douglases withdrew their TDCA claim made pursuant to Tex. Fin. Code § 392.303(a)(2) and their wrongful-foreclosure claim. Doc. 25, Pls.' Resp., 8–9.

*A.*     *TDCA*

1.     Section 392.304(a)(8)

The Douglases claim that Wells Fargo violated Tex. Fin. Code § 392.304(a)(8) because Wells Fargo's letters exaggerated how much the Douglases were past due. Doc. 8, Pls.' Am. Compl., ¶¶ 26–27. Wells Fargo argues that this claim should be dismissed because the Douglases failed to allege that either letter altered how much they thought they owed. Doc. 12, Def.'s Mot. to Dismiss, 8–9.

The Court agrees with Wells Fargo. Section 392.304(a)(8) prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt." "To state a viable claim for a violation of section 392.304(a)(8), [the Douglases] must demonstrate that [Wells Fargo] made a false or misleading statement that 'led [them] to think differently with respect to the character, extent, amount, or status of [their] debt.'" *Ingram v. Beneficial Fin., Inc.*, No. 3:13-CV-4037-L, 2015 WL 1443110, at *9 (N.D. Tex. Mar. 30, 2015) (quoting *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)). The Douglases pleaded in their complaint that the letters indicated they owed more than actually owed. Doc. 8, Pls.' Am. Compl., ¶¶ 26–27. But they do not allege that the letters "led them to think differently with respect to the . . . amount" they owed. *Miller*, 726 F.3d at 723. So the Court **DISMISSES** this claim **without prejudice**.

2.     Section 392.301(a)(8)

The Douglases claim that Wells Fargo violated § 392.301(a)(8) by indicating in its letters that it would foreclose on their home if they did not pay their past due balance. Doc. 8, Pls.' Am. Compl.,¶ 28. Wells Fargo argues that the Court should dismiss this claim because § 392.301(a)(8)

does not prevent lenders from foreclosing on homes when the homeowners default. Doc. 12, Mot. to Dismiss, 11–12.

The Court agrees with Wells Fargo. Section 392.301(a)(8) prohibits debt collectors from "threatening to take an action prohibited by law." The Douglases' claim fails because "foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage." *Wildy v. Wells Fargo Bank, NA*, No. 3:12–CV–01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012). And the Douglases admit in their complaint that they defaulted on their mortgage by failing to make their mortgage payments from November 2016 through March 2017. Doc. 8, Pls.' Am. Compl., ¶ 11. Foreclosure is not an action prohibited by law because the Douglases defaulted, so the Douglases have failed to state a plausible claim under § 392.301(a)(8). Therefore, the Court **DISMISSES** this claim **with prejudice**.

B.      *Breach of Contract*

The Douglases claim in their complaint that Wells Fargo breached the deed[3] by failing to give them the excess proceeds from their home's foreclosure sale. Doc. 8, Pls.' Am. Compl., ¶¶ 41–50. The Douglases' claim is based on Wells Fargo's escrow shortage letter dated March 13, 2017. In that letter, Wells Fargo told the Douglases that their May 2017 mortgage payment would increase to $3119.86 due to a shortage in their escrow account and that no action was required from them. Doc. 8-H, Letter. The Douglases interpret this letter as proof that Wells Fargo waived its right to acceleration and that their total amount of indebtedness was only $3199.86, the May 2017 mortgage

---

[3] The deed states that "the proceeds from the sale [shall be applied] in the following order: (a) to all expenses of the sale; . . . (b) to all sums secured by this Security Instrument; and (c) any excess to the . . . persons legally entitled to it." Doc. 8-D, Deed, ¶ 22.

payment amount. *See* Doc. 8, Pls.' Am. Compl., ¶¶ 43–46. So in the Douglases' view, when their home was sold for $353,000 on May 2, 2017, they became entitled to $349,810.14, the difference between how much their home was sold for ($353,000) and what they say their total indebtedness was in May 2017 ($3199.86). *Id.* Wells Fargo wants the Court to dismiss this claim because the escrow shortage letter did not have anything to do with the Douglases' total indebtedness and could not have been an abandonment of acceleration, meaning Wells Fargo could not have breached the deed because there were no surplus proceeds. Doc. 12, Def.'s Mot. to Dismiss, 18–20.

The Court agrees with Wells Fargo. Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.). The Douglases have failed to demonstrate that Wells Fargo breached the deed by withholding excess proceeds because their interpretation of the escrow letter is plainly incorrect. First, the escrow shortage letter has nothing to do with the Douglases' outstanding balance of their loan. All the escrow letter says is that the Douglases' May 2017 mortgage payment was set to increase because of a shortage in their escrow account. The escrow-shortage letter in no way suggests that the Douglases' entire balance was only $3199.86. So the Douglases are not entitled to $349,810.14.

Second, Wells Fargo did not abandon its acceleration of the Douglases' loan in the escrow shortage letter. "A lender waives its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015) (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x. 677, 680 (5th Cir. 2015) (per curiam)). Wells Fargo did not abandon acceleration

because the escrow shortage letter does not ask for a payment. Again, the letter just informed the Douglases that their mortgage payment in May 2017 would increase to $3199.86 because their escrow account was low.

In sum, Wells Fargo did not breach the deed by not giving the Douglases excess proceeds because the Douglases have failed to demonstrate that there were any excess proceeds to give. The Court finds meritless the Douglases' related claims for unjust enrichment and money had and received for the same reasons. Therefore, the Court **DISMISSES** these claims **with prejudice**.

C.      *Negligent Misrepresentation*

The Douglases claim Wells Fargo committed negligent misrepresentation by exaggerating the Douglases' past-due amount in the Janaury 17 and March 3 letters. Doc. 8, Pls.' Am. Compl., ¶¶ 51–56. Wells Fargo asks the Court to dismiss this claim because the Douglases have not pleaded that their alleged negligent misrepresentation was given in the guidance of the Douglases' business. Doc. 12, Def.'s Mot. to Dismiss, 22–23.

The Court agrees with Wells Fargo.

Under Texas law, a claim for negligent misrepresentation consists of four elements: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005); *see also Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The first two elements indicate that negligent misrepresentation is a commercial tort; plaintiffs must show that the defendant negligently made a false representation "in the course of his business . . . for the guidance of others in their business."

*Posey*, 415 F.3d at 395; *see also Weakly v. East*, 900 S.W.2d 755, 759 (Tex. App.—Corpus Christi 1995, writ denied) (describing negligent misrepresentation as a "commercial tort"); *Sloane*, 825 S.W.2d at 443 (same). The Douglases' negligent-misrepresentation claim fails because they have not alleged that Wells Fargo sent the letters to guide them or anyone else in their business. *See Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *8 (N.D. Tex. Sept. 7, 2010) (sua sponte granting summary judgment on claim for negligent misrepresentation because the plaintiffs did not show "that the information [the loan servicing company] supplied [was] for guidance of others in their business"). Therefore, the Court **DISMISSES** this claim **with prejudice**.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Wells Fargo's motion to dismiss, Doc 12, and **DISMISSES** the Douglases' first amended complaint, Doc. 8. The Court dismisses with prejudice all of the Douglases' claims except for their TDCA claim made pursuant to Tex. Fin. Code § 392.304(a)(8), which they may replead by **May 25, 2018**.

SO ORDERED.
SIGNED: May 2, 2018

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE